NOT FOR PUBLICATION                                    (Docket No. 38)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____  :
                              :
PHILIP GREGORY MADDELIN,      :
                              :
              Plaintiff,      :   Civil No. 6-1054 (RBK)
                              :
         v.                   :   **OPINION**
                              :
DENNIS LEVINSON, et al.       :
                              :
              Defendants.     :
_____  :

**KUGLER**, United States District Judge:

Before the Court is a motion by Defendants Dennis Levinson,[1] Richard Mulvihill, and Gary Merline (collectively "Defendants") for summary judgment against Plaintiff Philip Gregory Maddelin ("Plaintiff"). For the reasons provided below, Defendants' motion for summary judgment will be granted.

**I.   Background**

Plaintiff was initially incarcerated in the Atlantic County Justice Facility on December 31, 2005. On December 19, 2006, with the assistance of counsel, Plaintiff pled guilty to one count of burglary and one count of attempted burglary, and

---

[1] Plaintiff improperly pled Defendant Dennis Levinson as "Dennis Levingston" in the complaint.

received a sentence of six years imprisonment with a mandatory three-year commitment. Atlantic County transferred custody of Plaintiff to the state of New Jersey in December 2006.

Plaintiff alleges that, beginning on January 10, 2006, the administrators of the Atlantic County Jail and Atlantic County officials systematically deprived him of his constitutional right of access to the courts. Specifically, Plaintiff alleges that the county jail denied him access to the law library by closing the jail's law library completely. In lieu of the physical law library, Atlantic County established a new policy, promulgated January 1, 2006, that allowed inmates to request, via an "Inmate Request Form," cases related to the charges relevant to the inmates' current incarceration.[2] The policy is subject to some limitations, namely that inmates can only have up to three cases, and there is a fifty-page per week maximum.[3] In addition, the

---

[2] Defendants allege that the new policy was in response to a host of problems with maintaining the physical law library. Specifically, Defendants state that inmates often damaged code and case books by tearing out sections. Defendants also state that the physical set up permitted a limited number of inmates to use the library at any given time. Finally, Defendants state that the financial and physical limitations of keeping a law library updated was more than the administration could accommodate.

[3] The inmates can either provide case names or citations for the specific cases they wish to access, or inmates can provide details of their case, and a researcher will return a list of the ten most recent cases most directly related to the inmates' situation. From that list of ten case, the inmate can select three cases. The inmates receive the printed research via in-house mail within five working days of the inmates' request.

policy explicitly states that if the inmate requests information unrelated to the charge or charges for which the inmate is incarcerated, Atlantic County will charge the inmate for the research, and will deduct the charges from the inmates' account balance.

Plaintiff initially requested access to the law library on January 10, 2006. On January 12, 2006, in response to his request, Plaintiff received notice that the jail now used Westlaw. Also, on January 10, 2006, Plaintiff wrote to Defendant Merline, the Warden of the jail, notifying Defendant Merline that Plaintiff felt the new policy violated Plaintiff's right to access a library. Defendant Merline responded on January 12, 2006, that all housing units received copies of the new policy and procedures for legal research. Also on January 10, 2006, Plaintiff requested a copy of the index to the New Jersey Administrative Code ("NJAC") 10A, which Plaintiff received.

On January 13, 2006, Plaintiff submitted a request for NJAC 10A:31-26.1, which addresses social service programs. On January 17, 2006, an administrator responded that because the request was unrelated to Plaintiff's charges, the jail would charge Plaintiff $69.96 for the copies. Also on January 13, 2006, Plaintiff requested a "copy of the index of the NJAC 10A from subchapter 29 an[d] up," to which the jail administrator responded, on January 17, that the jail would charge Plaintiff $69.96 for that

information. Also on January 13, 2006, Plaintiff requested "NJAC 10A:31-15.1, 10A:31-15.2, 10A:31-15.3." Again, the jail responded, on January 17, that the jail would charge plaintiff $69.96 for the printed pages.

On January 31, 2006, Plaintiff requested a "copy of N.J. Reporter Book #1 for legal research . . . in its entirety." On February 2, Plaintiff received a response from the jail that stated, "You are to request some pertinent [sic] to your charge only." On January 31, Plaintiff requested a copy of "N.J. Practice and Procedure Book #31 for legal research . . . in its entirety." On February 2, 2006, the jail again responded that Plaintiff must request information related to his charge. On January 31, Plaintiff also requested a copy of "N.J.Super. Book #1 for legal research," and on February 2, the jail informed Plaintiff that he needed to "make a legal request." On January 31, Plaintiff requested a copy of the "NJ Shepeard [sic] Guide 2005 or 2006 for legal research . . . in its entirety." Also on January 31, Plaintiff requested "N.J. Practice and Procedure Book #32 for legal research . . . in its entirety." It appears that the jail denied both of these requests on February 2.

Plaintiff then filed two inmate grievance forms, one addressed to Defendant Merline, and the other addressed to Defendant Mulvihill, who is the Department Head of the Department of Public Safety in Atlantic County. These grievances are

4

identical in that they complain of Plaintiff's perceived violation of his constitutional right to access to an "adequate law library," as well as access to a paralegal, and Plaintiff's disagreement with the jail charging Plaintiff for Westlaw copies. In the grievances, Plaintiff states that he "should be able to view and copy myself free of charge," and that the jail violated his "right to privacy." Plaintiff also states his concerns with submitting requests to the social worker, who is "not a paralegal." For relief, Plaintiff requests that Atlantic County "reopen the law library," "hire a paralegal to assist all inmates," and "place a computer in the law library connected to Westlaw" so that all inmates can access it. Plaintiff provided these grievances to the social worker on February 2, 2006.

On January 29, 2006, Plaintiff wrote a letter to Defendant Levinson, who is a Freeholder for Atlantic County. In this letter, Plaintiff complains of essentially the same problems, namely that the jail violated his right to access a law library.

On February 2, 2006, Plaintiff requested a copy of the "documents regarding the closure of the law library." On February 3, a jail administrator responded that there are no such documents, but stating that there is an addendum to the Inmate Handbook that addresses the change. The administrator attached

5

the addendum to the response.[4]

On March 7, 2006, Plaintiff filed a pro se complaint in the United States District Court for the District of New Jersey against Defendants.  Plaintiff alleges Defendants established policies that deprived him of his constitutional right to access a law library and the courts, and he sued pursuant to 42 U.S.C. § 1983. Plaintiff seeks a fully refurnished law library; a full time paralegal to assist inmates; computers in the law library, connected to Westlaw; release from jail to facilitate his access to legal documents to assist in his defense; and $2.6 million dollars. On January 31, 2007, Defendants moved for summary judgment.  Plaintiff opposes the instant motion.

**II.   Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is

---

[4] The record in this case is extensive, and includes numerous requests and responses similar to those outlined above. For the sake of brevity, the Court omits the remaining requests, responses and letters between the parties from the Opinion.

6

"material" if it may affect the outcome of the suit under the applicable law. Id. In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences in a light most favorable to the nonmoving party. Id. at 250.

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact. Fed. R. Civ. P. 56(e).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is

7

a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court.  <u>BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III. Analysis**

In <u>Bounds v. Smith</u>, the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). However, the Court later held that <u>Bounds</u> did not create an "abstract, freestanding right to a law library or legal assistance," and that an inmate must show more than the inadequacy of the inmates's prison's law library or sub-par legal assistance program. <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996). The Court further stated that to show a constitutional violation with regard to lack of meaningful access to the courts, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." <u>Id.</u> Therefore, to establish a <u>Bounds</u> violation, an inmate must show an "actual injury" that is the result of "the alleged shortcomings in the prison library or legal assistance program." <u>Id.</u> at 343. By way of example, the

8

Court stated that an inmate could demonstrate "actual injury" if the inmate established that a court dismissed "a complaint [the inmate] prepared . . . for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, [the inmate] could not have known." Id. at 351.

Importantly, the Supreme Court also stated that the Constitution requires only that prison authorities provide inmates with the "tools to attack their sentences, directly or collaterally, and the tools to challenge the conditions of [the inmates'] confinement." Id. The Court stated that the Constitution does not require that prison authorities "enable . . . prisoners to discover grievances." Id.

In this case, Plaintiff failed to allege that he suffered any "actual injury," as required by the Supreme Court in Lewis. In fact, the record demonstrates that in December 2006, with the assistance of an attorney, Plaintiff pled guilty to one count of burglary and one count of attempted burglary. To date, Plaintiff failed to allege that he filed a complaint challenging his sentence, or his conditions of confinement, and that as a result of the inadequacies of the legal assistance program at the jail, a court dismissed his complaint. Plaintiff alleges absolutely nothing beyond a nebulous assertion that the jail and Atlantic County administrators violated his perceived unequivocal right of

unfettered access to a law library, legal assistance, and the courts. In short, nothing in the record that shows that there is a genuine issue as to any material fact. As a result, the Court grants Defendants' motion for summary judgment.

**III. CONCLUSION**

    For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

Dated: <u>3/23/2007</u>        <u>s/Robert B. Kugler</u>
                            ROBERT B. KUGLER
                            United States District Judge